IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUERE BARNES, | : | CIVIL NO. 1:14-CV-1437 |
| | : | |
| Plaintiff, | : | (Chief Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| | : | |
| BRANDI MAHAMADOU, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATION

## I.   Statement of Facts and of the Case

The plaintiff, Tuere Barnes, is a federal inmate, who has been housed at federal prisons in West Virginia and Connecticut. (Docs. 1 and 10.) The defendant, Brandi Mahamadou, is the sister of Barnes' former cellmate, and resides within the Middle District of Pennsylvania.

Barnes' *pro se* complaint recited that Barnes is a novelist who had written a 409 page manuscript entitled "Street Glory" which he hoped to publish and turn into a screenplay and movie. (Id., ¶37.) Through his cellmate, Barnes became acquainted with the defendant, Mahamadou, whom he befriended and enlisted to help him

publish his manuscript. (Id.) While Barnes' complaint recites that his relationship with Mahamadou encountered many emotional ebbs and flows, Barnes reported that Mahamadou agreed to market his manuscript but was unable to successfully publish "Street Glory." (Id.) Therefore, Barnes instructed Mahamadou to return the manuscript to him. (Id.)

The well-pleaded facts in Barnes' complaint indicated that Mahamadou agreed to comply with this request and mailed the manuscript back to Barnes, but alleged that prison officials declined to deliver this 409 page work to Barnes, and instead returned the package to Mahamadou who attempted to re-mail the materials to Barnes. (Id.) Indeed, Barnes attached to his complaint prison documentation relating to the receipt and mailing of this manuscript. (Id.) According to the complaint, in the course of these mailings some or all of the manuscript may have been lost, and Barnes still has not received the manuscript mailed to him by Mahamadou. (Id.) Thus, Barnes alleged that he entrusted the manuscript to Mahamdou, who agreed to market or return the work but has now negligently lost this work. (Id.)

Service of Barnes' complaint was made on the defendant, Mahamadou, on October 24, 2014, (Doc. 18.), but Mahamadou did not respond to the complaint in any fashion. After several months' delay we then directed Barnes to show cause why this action should not be dismissed for failure to prosecute. (Doc. 20.) Barnes responded

to this order with alacrity, filing motions for the entry of default judgment, (Docs. 21 and 23.) as well as a motion for final remedies, which was in the nature of a motion to execute upon a judgment. (Doc. 25.) We know that Mahamadou was served with copies of these pleadings because she called the clerk and was advised of her need to respond to this lawsuit. Despite that advice, Mahamadou has not acted in this case, and the time for action has passed. On these facts, we recommended that default be entered against Mahamadou, and that Barnes be instructed to file a motion pursuant to Rule 55 seeking to liquidate these damages, and this matter be remanded to the undersigned for further proceedings. (Doc. 26.) On April 16, 2015, Barnes filed this motion to liquidate damages, (Doc. 27.), and on May 4, 2015, (Doc. 28.), the district court adopted our Report and Recommendation, entered a default judgment in favor of Barnes, and remanded this case to us for further consideration of Barnes' motion to liquidate this default judgment. Mahamadou has not responded to the motion to liquidate damages in any fashion despite the passage of nearly two months. Accordingly, this motion is now ripe for resolution.

In his motion to liquidate Barnes seeks damages totaling $67,967.00, and proposes a measure of damages for the loss of this unpublished manuscript which takes into account the labor which it took to prepare this work. According to Barnes, he spent 6 hours per day over one year researching his book, for a total of 2,190 hours

of research time. Barnes further estimates that he spent 2 hours per day over two years writing "Street Glory," and calculates the total hours of writing time for this work at 4,380 hours. We note that this calculation appears to be mathematically incorrect, and our own calculation of the writing time for this book, based upon Barnes' attestation that he wrote 2 hours per day for 2 years would be 1,480 hours (365 days per year x 2 years x 2 hours per day.) Barnes then proposes that these hours dedicated to the preparation of this book be compensated at an hourly rate of $10.10, the prevailing minimum wage in Barnes' home state of New York.

For the reasons set forth below, we recommend a more modest amount, $888.00, as the amount of liquidated damages in this action.

## II.  Discussion

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55 a default judgment may only be entered when the party against whom the default judgment is sought was served and "has failed to plead or otherwise respond." Rule 55(a), F.R.Civ.P. Furthermore, in ruling upon requests relating to default judgments it is well-settled that these decisions are:

> [L]eft primarily to the discretion of the district court. Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir.1951). We recognize, however, that this court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to [deny or] set aside the default judgment "so that cases

may be decided on their merits." Id. at 245. See also Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir.1983); Feliciano v. Reliant Tooling Company, Ltd., 691 F.2d 653, 656 (3d Cir.1982); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir.1982). Nevertheless, we do not [deny or] set aside the entry of default and default judgment unless we determine that the district court abused its discretion. We require the district court to consider the following factors in exercising its discretion . . . : (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. Gross v. Stereo Component Systems, Inc., 700 F.2d at 122; Feliciano v. Reliant Tooling Company, Ltd., 691 F.2d at 656; Farnese v. Bagnasco, 687 F.2d at 764.

United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984)

In this case, we have found that entry of default judgment was appropriate and default judgment has been entered against Mahamadou. "When a plaintiff prevails by default, he or she is not automatically entitled to the damages they originally demanded. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir.1990). Rather, defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he or she is entitled to the damages sought. Id.; DIRECTV Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir.2005)." Rainey v. Diamond State Port Corp., 354 F. App'x 722, 724 (3d Cir. 2009). In performing this task, "[t]he district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir.1993). In determining the amount, the district court may conduct a hearing. Fed.R.Civ.P. 55(b)(2). The court is not required to do so,

however, 'as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.' Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir.1997). 'It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.' Pope v. United States, 323 U.S. 1, 12, 65 S.Ct. 16, 89 L.Ed. 3 (1944). IBEW Local Union No. 102 v. Dane Const. Co., LLC, No. 08–907, 2009 WL 872018, at *2 (D.N.J. Mar. 30, 2009)." Malik v. Hannah, 661 F. Supp. 2d 485, 493 (D.N.J. 2009). As part of this process, "the defaulting party is entitled to be heard on the amount of damages. 5 James Wm. Moore et al., Moore's Federal Practice § 55.32[1][c], [f]." Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc., 270 F.R.D. 161, 164 65 (D. Del. 2010). These principles which require notice to the defaulting defendant and competent proof of the plaintiff's damages in a default action, apply with particular force in this case where the subject matter of this lawsuit–and unpublished manuscript– is property whose value is the subject of fair debate. See Wayland v. C.I.R., 29 T.C.M. (CCH) 616 (T.C. 1970) aff'd, No. 7704, 1970 WL 2420 (1st Cir. Dec. 8, 1970)(finding that unpublished manuscript had no market value).

In this case, Barnes has now filed a motion to liquidate this default judgment, Mahamadou has not responded to this motion and the time for filing a response has passed. Therefore, this matter is now ripe for resolution. In considering Barnes' motion to liquidate we begin with the proposition that an unpublished manuscript has no readily ascertainable market value. See Wayland v. C.I.R., 29 T.C.M. (CCH) 616 (T.C. 1970) aff'd, No. 7704, 1970 WL 2420 (1st Cir. Dec. 8, 1970)(finding that unpublished manuscript had no market value). However, just because the manuscript has no ascertainable market value does not mean that it has no value whatsoever. Quite the contrary, courts which have confronted the question of the value of unpublished manuscripts or other artistic works which are lost in shipment, have expressly endorsed other, alternate loss calculations for these works. As one court has observed in a similar setting, while: "the manuscripts were unique, and in the case of an author without an established reputation manuscripts not accepted for publication are incapable of exact valuation in money, it does not follow that [the plaintiff's] manuscripts were worthless. They had value to [the plaintiff] for the many hours of labor he said he had put into them, see Newman v. Clayton F. Summy Co., 133 F.2d 465, 466 (C.A. 2, 1943)." Seth v. British Overseas Airways Corp., 329 F.2d 302, 305-06 (1st Cir. 1964).

Using this benchmark, "the many hours of labor he said he had put into them," we turn to Barnes' assessment of those hours, as set forth in his motion to liquidate damages. At the outset, we note that Barnes alleges that he spent 6 hours per day over one year researching his book, for a total of 2,190 hours of research time. Barnes further estimates that he spent 2 hours per day over two years writing "Street Glory," and erroneously calculates the total hours of writing time for this work at 4,380 hours. This calculation is mathematically incorrect, and our own calculation of the writing time for this book, based upon Barnes' attestation that he wrote 2 hours per day for 2 years would be 1,460 hours. (365 days per year x 2 years x 2 hours per day.) Thus, the total hours devoted to the preparation of this work appear to be 3,650 hours.

Barnes then invites us to then multiply these hours dedicated to the preparation of this book by an hourly rate of $10.10, the prevailing minimum wage in Barnes' home state of New York. We recommend that the court decline this invitation, since it is undisputed that Barnes did not write the book from his home state, but rather prepared the book in federal prison, where the lowest prevailing wage rate paid to inmates is $.12 per hour. <u>Henthorn v. Dep't of Navy</u>, 29 F.3d 682, 683 (D.C. Cir. 1994)("The BOP, which set his wage, paid him only $.12 per hour for this work.") We believe that this wage rate, the prevailing minimum wage rate in the setting in

which this work was prepared, is the more appropriate measure of "the many hours of labor he said he had put into [writing this work] see Newman v. Clayton F. Summy Co., 133 F.2d 465, 466 (C.A. 2, 1943)." Seth v. British Overseas Airways Corp., 329 F.2d 302, 305-06 (1st Cir. 1964).

Using the prevailing minimum prison wage rate of $.12, per hour, and applying that wage rate to the hours expended by Barnes on this work, 3,650 hours, we calculate an amount of liquidated damages of $438.00. We then agree that Barnes would be entitled to also recover his filing fees of $400, plus postage expenses of $50. See 28 U.S.C. §1920.

Thus, we calculate the total liquidated damages and costs in this matter as follows:

| | |
|---|---|
| Liquidated Damages | $438.00 |
| Filing Fees | $400.00 |
| Postage Expenses | $ 50.00 |
| Total | $888.00 |

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion to liquidate default be GRANTED (Doc. 27.), and judgment be entered in favor of Barnes in the following amounts:

| | |
|---|---|
| Liquidated Damages | $438.00 |
| Filing Fees | $400.00 |
| Postage Expenses | $ 50.00 |
| Total | $888.00 |

IT IS FURTHER RECOMMENDED that Mahamadou be provided with a copy of this Report and Recommendation, and that Mahamadou's last known address, as reflected in Doc. 18, be added to the docket of this case.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of June 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge